**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |  |
|---|---|
| **BGC PARTNERS, INC., <u>et al.</u>,**<br><br>     Plaintiffs,<br><br>v.<br><br>**AVISON YOUNG (CANADA) INC., <u>et al.</u>,**<br><br>     Defendants. | Case No. 15-cv-00426 (CRC) |

**MEMORANDUM OPINION**

The pugilists in this case are competing heavyweights in the commercial real estate brokerage industry. On one side of the ring are New York-based BGC Partners, Inc., and two of its subsidiaries. On the other are Toronto-based Avison Young, two its U.S.-based subsidiaries, and its Chief Operating Officer. BGC sued in the District of Columbia Superior Court alleging that Avison Young poached brokers and customers from a third firm, Grubb & Ellis, whose assets BGC purchased out of bankruptcy in 2012. Avison Young removed the case to this Court, asserting both federal bankruptcy jurisdiction based on the case's connection to the Grubb & Ellis bankruptcy and diversity jurisdiction. BGC moves to remand. Finding that the case does not "arise in" the bankruptcy proceeding, that abstention is required even if the case is "related to" the bankruptcy, and that diversity is lacking, the Court will award this round of the bout to BGC and remand the case to D.C. Superior Court.

    A.    <u>Background</u>[1]

In 2008, the president of Grubb & Ellis, Mark Rose, left his position to become Avison Young's Chief Executive Officer. Compl. ¶ 27. With Rose at the helm, Avison Young

---

[1] The Court assumes the truth of all non-jurisdictional facts alleged in BGC's complaint.

aggressively expanded into the United States market, opening new offices in New York, Boston, Los Angeles, Washington, D.C., and other large cities across the country. Id.  Avison Young's expansion, according to BGC, was fueled by a conspiracy to steal clients and brokers from Grubb & Ellis. Id. ¶¶ 28, 30. BGC specifically alleges that Avison Young paid individual brokers around the country to terminate their contracts with Grubb & Ellis and to supply Avison Young with information on existing and potential clients. Id. ¶¶ 33–37.

Grubb & Ellis struggled in the wake of Avison Young's expansion, resulting in the firm's February 2012 bankruptcy. Id. ¶¶ 22, 28. BGC purchased Grubb & Ellis's assets shortly thereafter, id., and contends that Avison Young continued to steal Grubb & Ellis's brokers and commissions during the bankruptcy proceedings. Id. ¶ 29. Later in 2012, BGC sued Avison Young in New York state court for tortious interference with contractual relationships, tortious interference with prospective business relationships, unjust enrichment, and other claims. BGC Partners, Inc. v. Avison Young (Can.), Inc., 919 F. Supp. 2d 310, 313 (S.D.N.Y. 2013). After Avison Young removed that case to the United States District Court for the Southern District of New York, BGC sought remand, which the court granted. The court found that the parties as named were not completely diverse; that the case was not significantly related to the prior bankruptcy proceeding; and that the mandatory abstention doctrine prevented the court from exercising bankruptcy jurisdiction. Id. at 317–19. On remand, the state court dismissed the case for lack of personal jurisdiction. Pls.' Mem. in Supp. of Mot. to Remand or Abstain at 5.

BGC—along with its affiliates G&E Acquisition Company, LLC and G&E Real Estate, Inc.—then brought suit in District of Columbia Superior Court against Avison Young, its affiliates Avison Young–Washington, D.C., LLC, and Avison Young (USA) Inc., and Mark Rose, again raising claims of tortious interference and unjust enrichment in addition to new claims for conspiracy, theft of trade secrets, and conversion. Avison Young removed the case to this Court,

and BGC has again moved to remand. As in the New York case, Avison Young asserts two grounds for federal jurisdiction. It argues that bankruptcy jurisdiction exists because the case is connected to the Grubb & Ellis bankruptcy proceedings. Notice of Removal at 3. And it contends the Court has diversity jurisdiction because the parties are citizens of different states. Id. at 5. BGC disputes both grounds for jurisdiction.

## II.     Standard of Review

When faced with a motion to remand, the removing party has the burden to prove that there is federal jurisdiction. See Hood v. F. Hoffman-La Roche, Ltd., 639 F. Supp. 2d 25, 28 (D.D.C. 2009). Courts construe removal jurisdiction narrowly to avoid state court encroachment, Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 109 (1941), and any factual ambiguities are resolved in favor of remand. National Consumers League v. Flowers Bakeries, LLC, 36 F. Supp. 3d 26, 30 (D.D.C. 2014).

## III.    Analysis

### A.     Bankruptcy Jurisdiction

Federal courts exercise exclusive jurisdiction over bankruptcy cases. 28 U.S.C. § 1334. For convenience and efficiency in administering the bankruptcy estate, federal courts may also decide claims "arising in" or "related to" a bankruptcy proceedings. Id.; Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995). This broad grant of jurisdiction is tempered by rules of abstention. A federal court *may* abstain from exercising jurisdiction over claims that either arise in or relate to a bankruptcy, and it *must* abstain when a suit merely relating to a bankruptcy proceeding was originally brought in state court if the state court can timely adjudicate the claims. 28 U.S.C. § 1334(c). Avison Young maintains that "arising in" jurisdiction exists here because BGC has alleged violations of the automatic stay in the Grub & Ellis bankruptcy and that "related to"

jurisdiction exists because the bankruptcy estate may be able to recover if BGC prevails.[2]  BGC disputes the existence of bankruptcy jurisdiction and alternatively requests that the Court abstain from hearing the case under either the mandatory or permissive abstention doctrines.  Pls.' Mot. to Remand or Abstain at 9, 13.

### 1. "Arising in" Jurisdiction

Federal courts have jurisdiction over "administrative matters that arise only in bankruptcy cases and have no existence outside of the bankruptcy proceedings."  In re Kaiser Grp. Int'l, Inc., 421 B.R. 1, 8 (Bankr. D.D.C. 2009).  Examples of administrative matters include regulating court-appointed attorneys in bankruptcy cases and addressing misconduct by trustees.  Id.  "Arising in" jurisdiction is therefore limited to claims that are necessary to administer a bankruptcy estate.  In re Akl, 397 B.R. 546, 554 (Bankr. D.D.C. 2008).  "[P]roceedings or claims arising in Title 11 are those that are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy."  Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC, 569 F.3d 485, 489 (D.C. Cir. 2009) (internal quotation omitted).

Avison Young argues that BGC's allegations of interference with the Grubb & Ellis bankruptcy are sufficient to create "arising in" jurisdiction.  Notice of Removal at 5.  During bankruptcy proceedings, the bankruptcy estate is under an automatic stay, meaning that third parties are not allowed to take or receive the debtor's property.  18 U.S.C. § 152(5).  According to BGC, Avison Young continued to steal business from Grubb & Ellis after the latter filed for bankruptcy. Notice of Removal Ex. 1 at 9.  Avison Young contends that this alleged violation of Section 152(5)

---

[2] Under the agreement BGC entered into when it purchased Grubb & Ellis's assets, if BGC obtains more than $20 million from this lawsuit, the bankruptcy estate will recover a portion.  Opp'n to Mot. to Remand Ex. W at 53.  Considering the scope of BGC's allegations, a recovery of over $20 million appears within the realm of possibility.

creates "arising in " jurisdiction because BGC's claims rest on a violation of the automatic stay. Notice of Removal at 4.  The Court disagrees.  "The bankruptcy code provides a cause of action [11 U.S.C. § 362(k)] for a debtor to recover damages—including attorney fees, costs, and even punitive damages—for the violation of an automatic stay." Miller v. District of Columbia, Case No. 06-1935, 2007 WL 1748890, at *4 (D.D.C. June 18, 2007) (finding "arising under" jurisdiction because a violation of Section 362(k) was "precisely the violation that plaintiff has alleged in his Complaint").  BGC, however, has not brought a claim under this statute, or otherwise raised claims that are centrally related to the bankruptcy proceeding.  Rather, it alleges state law claims for tortious interference with contractual relationships, tortious interference with prospective business relationships, conspiracy, theft of trade secrets, conversion, and unjust enrichment based on Avison Young's activities before, during, and after the bankruptcy.  Whether Avison Young violated the stay is merely incidental to these claims.  As the Southern District of New York also found, BGC's claims against Avison Young therefore do not arise under bankruptcy law. BGC Partners, Inc., 919 F. Supp. 2d at 318 ("at bottom [BGC's] claims are for interference with contracts and certain duties of loyalty").  Moreover, BGC's tort claims are considerably removed from the "administrative matters" that typically justify arising in jurisdiction.  See, e.g., In re Kaiser Grp. Int'l, Inc., 421 B.R. at 8 (noting that "administrative matters" typically "include a bankruptcy court's appointment, supervision, enforcement of appropriate standards of conduct, and approval of fees of professionals conducting themselves in a bankruptcy case.").  Because BGC's claims go beyond the scope of the Grubb & Ellis bankruptcy proceeding and BGC has not brought a claim under Section 362(k), there is no "arising in" jurisdiction.

        2.        <u>Mandatory Abstention</u>

Avison Young alternatively maintains that the Court may exercise jurisdiction because BGC's claims relate to Grubb & Ellis's bankruptcy.  BGC retorts that even if the Court has "related

to" bankruptcy jurisdiction over these claims, it must abstain.[3] Federal courts must abstain from hearing bankruptcy cases if (1) the motion to abstain is timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case; (4) federal jurisdiction is based solely on Section 1334 bankruptcy jurisdiction; (5) the action has already commenced in state court; and (6) the action can be "timely adjudicated" in state court.  28 U.S.C. § 1334(c)(2); In re WorldCom, Inc., 293 B.R. 308, 331 (S.D.N.Y. 2003).

BGC has satisfied all of the mandatory abstention factors.  First, the motion to abstain was timely.  Second, all of BGC's claims are based in state law.  Notwithstanding Avison Young's assertion that some of BGC's allegations involve violations of federal law, as discussed above, the central allegations are interference with business relations and breaches of fiduciary duties, which are essentially state law issues.  Third, also as explained above, this case does not arise in a bankruptcy proceeding.  To the extent bankruptcy jurisdiction exists, it would be "related to" jurisdiction conferred by the potential impact of an award greater than $20 million on the bankruptcy estate.  Fourth, because there is no diversity jurisdiction, as explained below, Section 1334 is the only possible avenue to federal jurisdiction.  Fifth, the action was commenced in District of Columbia Superior Court.

Sixth and finally, the case can be timely adjudicated in state court.  When evaluating timely adjudication under Section 1334(c)(2), courts look at the backlog of the state court's calendar

---

[3] The parties also disagree over whether there is "related to" bankruptcy jurisdiction and, in fact, which standard to apply in determining "related to" jurisdiction.  Avison Young urges the Court to exercise jurisdiction because "the outcome of [the case] could conceivably have any effect on the estate being administered in bankruptcy," In re Ostroff, 433 B.R. 442, 447 (Bankr. D.D.C. 2010), while BGC asserts that the Court should only exercise jurisdiction if there is a "close nexus to the bankruptcy court or proceeding," Advantage Healthplan, Inc. v. Potter, 391 B.R. 521, 545 (D.D.C. 2008).  Because, as the Court explains below, the mandatory abstention doctrine bars federal review of these claims even if "related to" jurisdiction existed, the Court need not decide either issue.

compared to the federal court's calendar, the complexity of the issues presented, the status of the bankruptcy proceeding, and whether the state court proceeding would "prolong the administration or liquidation of the estate." Parmalat Capital Fin. Ltd. v. Bank of Am. Corp., 639 F.3d 572, 580 (2d Cir. 2011). The focus is on whether adjudication in a state court will affect the bankruptcy proceeding. Power Plant Entm't Casino Resort Ind., LLC v. Mangano, 484 B.R. 290, 297 (Bankr. D. Md. 2012). Regarding the comparative state of federal and state dockets, BGC points out that District of Columbia courts are disposing of civil cases faster than they are filed. See District of Columbia Courts' Statistical Summary, CY 2014 at 8 (2014);[4] see also Weaver v. Owens-Corning Fiberglas Corp., 275 B.R. 119, 121 (Bankr. D.D.C. 2002) (concluding that remand to Superior Court was necessary to *prevent* delays). Nor is there any evidence that BGC's tort claims are overly complex. See BGC Partners, Inc., 919 F. Supp. 2d at 319 ("This litigation is not particularly complex and, to the extent that it is, the state court may be better equipped to resolve the issues."). Finally, remand to District of Columbia Superior Court would not delay efficient administration of the bankruptcy estate because the bankruptcy proceeding is closed. See In re Akers, No. 07-00662, 2012 WL 3133924, at *2 (Bankr. D.D.C. Aug. 1, 2012) (holding that there was no possible effect on the bankruptcy estate because "the plan has been completed and the estate has been administered"). Therefore, the matter can be timely adjudicated in District of Columbia Superior Court.

Because the six elements of Section 1334(c)(2) are satisfied, the Court must abstain from exercising any bankruptcy jurisdiction it may have. The Court need not determine whether it also should abstain under the permissive abstention rule found at Section 1334(c)(1).

---

[4] Available at http://dccourts.gov/internet/documents/2014-statistical-summary-final-02-12-15.pdf.

B.     Diversity Jurisdiction

Federal courts may exercise jurisdiction over civil actions where the amount in controversy is greater than $75,000 and the dispute is between citizens of different states.  28 U.S.C. § 1332(a).  Federal jurisdiction requires complete diversity, meaning all plaintiffs must be diverse from all defendants in a given case.  Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996).  Limited liability corporations are citizens of every state where their members are citizens.  Shulman v. Voyou, LLC, 305 F. Supp. 2d 36, 40 (D.D.C. 2004).  Citizenship is determined at the date of filing.  Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991).

The Court may not exercise diversity jurisdiction unless BGC and its affiliates are citizens of states other than Avison Young and its affiliates.[5]  Avison Young represents that the defendants, including the members of the LLC defendant, are citizens of Delaware, the District of Columbia, Illinois, New York, Maryland, and Virginia.  Opp'n to Mot. to Remand Ex. G, H, J.  BGC has submitted a declaration explaining that the members of the LLC plaintiff include individuals who are also citizens of the District of Columbia, Maryland, Illinois, and Virginia.  Reply Ex. 2.[6]

---

[5] BGC asserts that Avison Young has insufficiently pled the citizenship of its affiliates and that Avison Young should be denied leave to amend its declarations of citizenship.  Pls. Reply at 4, 7.  But insufficient allegations of citizenship are technical defects that may be easily corrected.  See Breakman v. AOL LLC, 545 F. Supp. 2d 96, 102 (D.D.C. 2008) (permitting an LLC to correct its statement of citizenship).  Accordingly, the Court accepts Avison Young's amended declarations of citizenship.

[6] Avison Young argues that BGC's declaration in support of the plaintiffs' citizenship is insufficient.  BGC has provided the declaration of Mark Prasad, who has personal knowledge of the partnership structure of BGC Holdings, L.P.  BGC Holdings' members constitute parties for the purposes of determining citizenship because BGC Holdings, L.P. is a member of another partnership which, in turn, is a member of plaintiff G&E Acquisition Company, LLC.  Prasad declares that he has reviewed the business records of BGC Holdings, L.P., which are kept in the ordinary course of business, and has determined that a number of its members have been citizens of the district of Columbia, Illinois, Maryland, and Virginia at all relevant times.  Pls.'s Reply Ex. 2 ¶¶ 2–5.  This declaration is sufficient to establish the citizenship of the plaintiffs.

Because limited liability corporations are citizens of states where their members are citizens, Shulman, 305 F. Supp. 2d at 40, both AY-Washington, D.C. and BGC Holdings, L.P. are citizens of District of Columbia, Maryland, and Virginia.  This overlapping citizenship defeats complete diversity between the parties.

Even if complete diversity were present, removal would be barred by the forum defendant rule, which prevents defendants who are citizens of the forum state from removing a case solely on the basis of diversity.  28 U.S.C. § 1441(b)(2).  Avison Young acknowledges that several members of AY-Washington, D.C. are citizens of District of Columbia.  Opp'n to Mot. to Remand Ex. H.  And as explained above, this Court may not exercise bankruptcy jurisdiction, so there is no possible basis for federal jurisdiction other than diversity.  Therefore, Avison Young cannot invoke diversity jurisdiction under the forum defendant rule.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion to remand is granted. The Court will remand the case to District of Columbia Superior Court.

CHRISTOPHER R. COOPER
United States District Judge

Date:  July 22, 2015